# ORIGINAL

ncf1

Fisher And Fisher
File # 51469

**FILED**
JUL 29 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Countrywide Home Loans, Inc.
    Plaintiff

VS.

Douglas Swanson
    Defendant

JUDGE ALESIA
MAGISTRATE JUDGE KEYS
NO.
**02C 5335**

This is an attempt to collect a debt and any information obtained will be used for that purpose.

**DOCKETED**
JUL 29 2002

## COMPLAINT FOR FORECLOSURE

Now comes Plaintiff, by its attorneys, FISHER AND FISHER, ATTORNEYS AT LAW, P.C., and, pursuant to Illinois Compiled Statutes, Chapter 735, Section 15, 15-1101 et seq., alleges the following:

1. Jurisdiction of this court is based upon diversity of citizenship. Plaintiff is a corporation incorporated under the laws of the STATE OF NEW YORK, having its principal place of business in the STATE OF CALIFORNIA. Defendant mortgagors are citizens of the STATE OF ILLINOIS. This matter in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

2. Plaintiff files this complaint to foreclose the mortgage hereinafter described, and joins the following persons as defendants:

Douglas Swanson - an Illinois citizen

3. Attached as Exhibit "A" is a copy of the note, as Exhibit "B" is a copy of the mortgage and as Exhibit "C" is a copy of the assignment(s) secured thereby.

4. Information concerning mortgage:

(A) Nature of instrument: Mortgage

(B) Date of Mortgage: January 21, 2000

(C) Name of Mortgagor: Douglas Swanson

(D) Name of Mortgagee: Prism Mortgage Company

/-/

(E) Date and place of recording: January 28, 2000, WILL County Recorder of Deeds Office

(F) Identification of recording: R2000011591

(G) Interest subject to the mortgage: Fee Simple

(H) Amount of original indebtedness including subsequent advances made under the mortgage: $179,100.00

(I) Legal description and the common address:
LOT 206 IN MCDONALD MANOR ESTATES UNIT SIX, BEING A SUBDIVISION OF PART OF THE SOUTHEAST QUARTER OF SECTION 34, TOWNSHIP 35 NORTH, RANGE 9, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED AUGUST 8, 1994 AS DOCUMENT NO. R94-76769, IN WILL COUNTY, ILLINOIS.
c/k/a 22832 South Anna Drive, Channahon, IL 60410
Tax ID# 06-34-404-008

(J) Statement as to default now due:

1. Date of default: 02/2002

2. Unpaid principal balance: $175,251.45.

3. Per diem interest accruing: $31.21

(K) Name of present owners of the real estate:

Douglas Swanson

(L) Names of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated:

- None

(M) The following defendants, except those who have received a discharge of this debt in any chapter under the United States Bankruptcy Code, may be held personally liable for the deficiency, if any:

Douglas Swanson

(N) Capacity in which plaintiff brings this foreclosure: Plaintiff is the owner and legal holder of said note, mortgage and indebtedness.

(O) Facts in support of request for attorneys' fees and of costs and expenses.

Plaintiff has been required to retain counsel for litigation of this foreclosure and to incur substantial attorneys' fees, court costs, title insurance or abstract costs and other expenses which should be added to the balance secured by said mortgage, and which are a lien upon said real estate being foreclosed, as provided in said mortgage.

5. Pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. (1977), Defendant(s) may dispute the validity of the debt or any portion thereof. If Defendant(s) do so in writing within thirty (30) days of receipt of this pleading, Counsel for Plaintiff will obtain and provide Defendant(s) with written verification thereof; otherwise, the debt will be assumed to be valid. Likewise, if requested within thirty days (30) days of receipt of this pleading, Counsel for Plaintiff will send Defendant(s) the name and address of the original creditor if different from above.

## REQUEST FOR RELIEF

Plaintiff requests:

- (i) A judgment to foreclose such mortgage providing for a sale by public auction

- (ii) An order granting a shortened redemption period, if authorized by law.

- (iii) A personal judgment for a deficiency, if authorized by law.

- (iv) An order granting possession.

- (v) An order placing the mortgagee in possession or appointing a receiver if and when sought.

- (vi) A judgment for attorneys' fees, costs and expenses including but not limited to payments for taxes, insurance, securing, inspections and other expenses of the plaintiff.

- (vii) Enforcement of its assignment of rents derived from said real estate.

(viii) Such other relief as equity may require, including, but not limited to, declaratory and injunctive relief.

Plaintiff

Countrywide Home Loans, Inc.

By: _____
One of Plaintiff's Attorneys

Attorneys for Plaintiff
FISHER AND FISHER
ATTORNEYS AT LAW, P.C.
120 North LaSalle Street, Suite 2520
Chicago, IL 60602
(773) 854-8055
ARDC# 816108

Loan No. 12501468

# ADJUSTABLE RATE NOTE

FHA Case No. 137-0286736-729

JANUARY 21, 2000
[Date]

22832 SOUTH ANNA DRIVE
CHANNAHON, IL 60410
[Property Address]

### 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **PRISM MORTGAGE COMPANY, AN ILLINOIS CORPORATION** and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of **ONE HUNDRED SEVENTY-NINE THOUSAND ONE HUNDRED AND 00/100** Dollars (U.S. $ **179,100.00** ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **SIX AND ONE HALF** percent ( **6.500%**) per year until the full amount of principal has been paid. The interest rate may change in accordance with paragraph 5(C) of this Note.

### 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument". That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **MARCH 1, 2000**. Any principal and interest remaining on the first day of **FEBRUARY 1 2030**, will be due on that date, which is called the maturity date.

**(B) Place**

Payment shall be made at **P.O. BOX 54 - 2934, CHICAGO, IL 60654 - 0934** or at such place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Initially, each monthly payment of principal and interest will be in the amount of U.S. $ **1,132.03**. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument. This amount may change in accordance with paragraph 5(E) of this Note.

### 5. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Date**

The interest rate may change on the first day of **APRIL, 2001**, and on that day of each succeeding year. "Change Date" means each date on which the interest rate could change.

**(B) The Index**

Beginning with the first Change Date, the interest rate will be based on an Index. "Index" means the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. "Current Index" means the most recent Index figure available 30 days before the Change Date. If the Index (as defined above) is no longer available, Lender will use as a new Index any index prescribed by the Secretary (as defined in paragraph 7(B)). Lender will give Borrower notice of the new Index.

MULTISTATE - FHA Adjustable Rate Note
Form 27615 1/96
Contour Software, Inc. (800) 777-1718
#CON27615 (FHAARMNT) 3/96      Page 1 of 3      Initials: D.S.



**(C) Calculation of Interest Rate Changes**

Before each Change Date, Lender will calculate a new interest rate by adding a margin of **TWO AND THREE QUARTERS** percentage points ( **2.750** %) to the Current Index and rounding the sum to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in paragraph 5(D) of this Note, this rounded amount will be the new interest rate until the next Change Date.

**(D) Limits on Interest Rate Changes**

The interest rate will never increase or decrease by more than one percentage point (1.0%) on any single Change Date. The interest rate will never be more than five percentage points (5.0%) higher or lower than the initial interest rate stated in paragraph 2 of this Note.

**(E) Calculation of Payment Changes**

If the interest rate changes on a Change Date, Lender will calculate the amount of monthly payment of principal and interest which would be necessary to repay the unpaid principal balance in full at the maturity date at the new interest rate through substantially equal payments. In making such calculation, Lender will use the unpaid principal balance which would be owed on the Change Date if there had been no default in payment on the Note, reduced by the amount of any prepayments to principal. The result of this calculation will be the amount of the new monthly payment of principal and interest.

**(F) Notice of Changes**

Lender will give notice to Borrower of any change in the interest rate and monthly payment amount. The notice must be given at least 25 days before the new monthly payment amount is due, and must set forth (i) the date of the notice, (ii) the Change Date, (iii) the old interest rate, (iv) the new interest rate, (v) the new monthly payment amount, (vi) the Current Index and the date it was published, (vii) the method of calculating the change in monthly payment amount, and (viii) any other information which may be required by law from time to time.

**(G) Effective Date of Changes**

A new interest rate calculated in accordance with paragraphs 5(C) and 5(D) of this Note will become effective on the Change Date. Borrower shall make a payment in the new monthly amount beginning on the first payment date which occurs at least 25 days after Lender has given Borrower the notice of changes required by paragraph 5(F) of this Note. Borrower shall have no obligation to pay any increase in the monthly payment amount calculated in accordance with paragraph 5(E) of this Note for any payment date occurring less than 25 days after Lender has given the required notice. If the monthly payment amount calculated in accordance with paragraph 5(E) of this Note decreased, but Lender failed to give timely notice of the decrease and Borrower made any monthly payment amounts exceeding the payment amount which should have been stated in a timely notice, then Borrower has the option to either (i) demand the return to Borrower of any excess payment, with interest thereon at the Note rate (a rate equal to the interest rate which should have been stated in a timely notice), or (ii) request that any excess payment, with interest thereon at the Note rate, be applied as payment of principal. Lender's obligation to return any excess payment with interest on demand is not assignable even if this Note is otherwise assigned before the demand for return is made.

**6. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**7. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR** percent ( **4.000** %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorney's fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 8. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 9. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 10. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)         _____ (Seal)
DOUGLAS SWANSON                   -Borrower                                          -Borrower

PAY TO THE ORDER OF _____ (Seal)         _____ (Seal)
                                  -Borrower                                          -Borrower
WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.
BY _____
CAROL HANVU/HINANON
ASST. SECRETARY

**MULTISTATE - FHA Adjustable Rate Note**
Form 27615 1/96
Contour Software, Inc. (800) 777-1718
#CON27615 (FHAARMNT) 3/96          Page 3 of 3

R2000011591

4909132

MARY ANN STUKEL 9P
Will County Recorder
Will County
R 2000011591 Page 1 of 9
BAN Date 01/28/2000 Time 10:54:17
Recording Fees: 20.00

PREPARED BY:
WHEN RECORDED RETURN TO
PRISM MORTGAGE COMPANY, ATTN: FINAL DOCS
440 NORTH ORLEANS
CHICAGO, IL 60610

[Space Above This Line For Recording Data]

State of Illinois

| FHA Case No. |
| --- |
| 137-0286736-729 |

# MORTGAGE

**LOAN NO. 12501468**

THIS MORTGAGE ("Security Instrument") is given on JANUARY 21, 2000
The mortgagor is
DOUGLAS SWANSON, A MARRIED MAN

("Borrower(s)"). This Security Instrument is given to

PRISM MORTGAGE COMPANY,
AN ILLINOIS CORPORATION
which is organized and existing under the laws of ILLINOIS, and whose address is
440 NORTH ORLEANS
CHICAGO, IL 60610
("Lender"). Borrower owes Lender the principal sum of ONE HUNDRED SEVENTY-NINE THOUSAND ONE HUNDRED AND 00/100
Dollars (U.S. $ 179,100.00 ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on FEBRUARY 1, 2030. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 6 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in
WILL County, Illinois:
LOT 206 IN MCDONALD MANOR ESTATES UNIT SIX, BEING A SUBDIVISION
OF PART OF THE SOUTHEAST QUARTER OF SECTION 34, TOWNSHIP 35
NORTH, RANGE 9, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING
TO THE PLAT THEREOF RECORDED AUGUST 8, 1994 AS DOCUMENT NO.
R94-76769, IN WILL COUNTY, ILLINOIS.

APN: 06-34-404-008

EXHIBIT B

FHAILMTG (05/96) Page 1 of 9 Initials: DS

R 900011591

which has the address of    **22832 SOUTH ANNA DRIVE, CHANNAHON**
                                    [Street]                                  [City]
Illinois      **60410**      ("Property Address");
                [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall deal with the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

<u>First</u>, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

<u>Second</u>, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

<u>Third</u>, to interest due under the Note;

<u>Fourth</u>, to amortization of the principal of the Note; and

<u>Fifth</u>, to late charges due under the Note.

TG (05/95)                      Page 2 of 7                      Initials: DS

P?000011591

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

FHAILMTG (05/96)

Initials: D S

R?900011591

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 DAYS from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise or any right or remedy.

R2000011591

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signors.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this Paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in the paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

P000011591

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| ☐ Condominium Rider | ☐ Planned Unit Development Rider |
|---|---|
| ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☐ Non-Owner Occupancy Rider | ☒ Adjustable Rate Rider |
| ☐ Other [Specify] | |

FHAILMTG (05/96)

Page 6 of 7

Initials: DS

R2000011591

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____     _____(Seal)
                                              DOUGLAS SWANSON                 - Borrower

_____     _____(Seal)
                                                                              - Borrower

                                              _____(Seal)
                                                                              - Borrower

                                              _____(Seal)
                                                                              - Borrower

[Space Below This Line For Acknowledgment]

STATE OF ILLINOIS } ss.
County of Will }

I, the undersigned, a Notary Public in and for said county and state do hereby certify that Douglas Swanson, personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he signed and delivered the said instrument as his free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this 21st day of January, 2000

My Commission expires:

"OFFICIAL SEAL"
JETTA R. WALCH
Notary Public, State of Illinois
Commission Expires 3/14/01

_____
Notary Public

FHAILMTG (05/96)                                                              Page 7 of 7

R20000565 3

Recording requested by
PRISM MORTGAGE COMPANY
When recorded mail to:
COUNTRYWIDE HOME LOANS
1800 TAPO CANYON ROAD, SV-79C
SIMI VALLEY, CA 93063
Attn: Joe Tharpe

MARY ANN STUKEL 2P
Will County Recorder
Will County

R 2000056563
KLH Date 05/30/2000
Recording Fees:

Page 1 of 2
Time 10:06:22
15.00

CORPORATION ASSIGNMENT OF MORTGAGE
Account# 4909132
Commitment# 3636

For value received, the undersigned, PRISM MORTGAGE COMPANY, 440 N. ORLEANS CHICAGO, IL 60610, hereby grants, assigns and transfers to:
COUNTRYWIDE HOME LOANS, INC.
1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063

All its interest under that certain Mortgage dated 1/21/00, Executed by: DOUGLAS SWANSON Mortgagor as per MORTGAGE recorded as Instrument No. R20000
11591 on 1/26/00 in Book            Page            of official records in the County Recorder's Office of WILL County, ILLINOIS.
Tax Parcel = 0634404008
WILL COUNTY TREASURER
Original Mortgage $179,100.00
22832 SOUTH ANNA DR, CHANNAHON, IL 60410

(See attached page for Legal Description)
Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

Dated: 2/28/00
State of California
County of Ventura

PRISM MORTGAGE COMPANY

By _____
DEANNA BURNS
ASSISTANT SECRETARY

On 2/28/00 before me, Y.T. PEREZ , personally appeared DEANNA BURNS ASSISTANT SECRETARY, PRISM MORTGAGE COMPANY, Personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their duly authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the persons acted, executed the instrument.
Witness my hand and official seal.

Signature Y.T. Perez
         Y.T. PEREZ

Prepared by: Joe Tharpe
1800 TAPO CANYON ROAD, SV-79C, SIMI VALLEY, CA 93063
Phone # (805) 520-5100 Extn: 4748

Y. T. PEREZ
Commission # 1238147
Notary Public - California
Ventura County
My Comm. Expires Oct 16, 2003



1062 EXHIBIT C

JS 44
(Rev 07/89)     **CIVIL COVER SHEET**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**JUDGE ALESIA**

**I (a) PLAINTIFFS**     **DEFENDANTS**

Countrywide Home Loans, Inc.     Douglas Swanson

**02C 5335**

**MAGISTRATE JUDGE KEYS**

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __Ventura__
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __Will__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Fisher & Fisher, Attorneys At Law, PC
120 North LaSalle, Ste. 2520
Chicago, IL 60602

ATTORNEYS (IF KNOWN)

**FILED**
**JUL 29 2002**
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

MORTGAGE FORECLOSURE - 28 U.S. 1332

**V. NATURE OF SUIT** (PLACE AN x IN ONE BOX ONLY)

[Nature of suit checklist - REAL PROPERTY: ☒ 220 Foreclosure]

**VI. ORIGIN** (PLACE AN x IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER FRCP 23

DEMAND $ 175,251.45

JURY DEMAND: ☐ YES ☐

**VIII. REMARKS** In response to ☐ is not a refiling of a previously dismissed action

General Rule 2.21D(2) this case ☐ is a refiling of case number _____ of Judge _____

DATE **JUL 29 2002**     SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT

51469

**FILED**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### Eastern Division

JUL 29 2002

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

JUDGE ALESIA

**In the Matter of**

Countrywide Home Loans, Inc.
v
Douglas Swanson, et al.

Case Number: **02C 5335**

MAGISTRATE JUDGE KEYS

**DOCKETED**

JUL 29 2002

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Countrywide Home Loans, Inc.

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME Elizabeth Kaplan Meyers | NAME Renee Meltzer Kalman |
| FIRM Fisher and Fisher | FIRM Fisher and Fisher |
| STREET ADDRESS 120 N. LaSalle St., Ste 2520 | STREET ADDRESS 120 N. LaSalle St., Ste 2520 |
| CITY/STATE/ZIP Chicago, IL 60602 | CITY/STATE/ZIP Chicago, IL 60602 |
| TELEPHONE NUMBER 312-372-4784 | TELEPHONE NUMBER 312-372-4784 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 06196562 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 06198331 |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☒ NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME Michael S. Fisher | NAME RYAN KRUEGER |
| FIRM Fisher and Fisher | FIRM FISHER AND FISHER |
| STREET ADDRESS 120 N. LaSalle St., Ste. 2520 | STREET ADDRESS 120 N. LASALLE ST., STE. 2520 |
| CITY/STATE/ZIP Chicago, IL 60602 | CITY/STATE/ZIP CHICAGO, IL 60602 |
| TELEPHONE NUMBER 312-372-4784 | TELEPHONE NUMBER 312-372-4784 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 06216064 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6237486 |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☒ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

**PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.**

514

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### Eastern Division

**FILED**
JUL 29 2002

In the Matter of
Countrywide Home Loans, Inc.
v.
Douglas Swanson, et al.

**JUDGE ALESIA**

Case Number: **02C 5335**



MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Countrywide Home Loans, Inc.

**MAGISTRATE JUDGE KEYS**

**DOCKETED**
JUL 29 2002

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME: Erik E. Blumberg | NAME: Marc D. Engel |
| FIRM: Fisher and Fisher | FIRM: Fisher and Fisher |
| STREET ADDRESS: 120 N. LaSalle St., Suite 2520 | STREET ADDRESS: 120 N. LaSalle St., Suite 2520 |
| CITY/STATE/ZIP: Chicago, IL 60602 | CITY/STATE/ZIP: Chicago, IL 60602 |
| TELEPHONE NUMBER: 312-372-4784 | TELEPHONE NUMBER: 312-372-4784 |
| IDENTIFICATION NUMBER: 6226628 | IDENTIFICATION NUMBER: 6255891 |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☒ NO ☐ |
|  | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME: THOMAS J. DONAHUE | NAME: Kenneth J. Johnson |
| FIRM: FISHER AND FISHER | FIRM: Fisher and Fisher |
| STREET ADDRESS: 120 N. LASALLE, SUITE 2520 | STREET ADDRESS: 120 N. LaSalle St., Suite 2520 |
| CITY/STATE/ZIP: CHICAGO, IL 60602 | CITY/STATE/ZIP: Chicago, IL 60602 |
| TELEPHONE NUMBER: 312-372-4784 | TELEPHONE NUMBER: 312-372-4784 |
| IDENTIFICATION NUMBER: 6201082 | IDENTIFICATION NUMBER: 90785090 |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☒ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.

Case: 1:02-cv-05335 Document #: 1 Filed: 07/29/02 Page 19 of 19 PageID #:19

51469

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
Eastern Division



**FILED** JUL 29 2002
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

In the Matter of

Countrywide Home Loans, Inc.
v
Douglas Swanson, et al.

Case Number: 02C 5335
JUDGE ALESIA
MAGISTRATE JUDGE KEYS

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Countrywide Home Loans, Inc.

**DOCKETED** JUL 29 2002

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME: ALYCIA A. FITZ | NAME: Cynthia Sutherin |
| FIRM: Fisher and Fisher | FIRM: Fisher and Fisher |
| STREET ADDRESS: 120 N. LaSalle St., Suite 2520 | STREET ADDRESS: 120 N. LaSalle, Suite 2520 |
| CITY/STATE/ZIP: Chicago, IL 60602 | CITY/STATE/ZIP: Chicago, IL 60602 |
| TELEPHONE NUMBER: 312-372-4784 | TELEPHONE NUMBER: 312-372-4784 |
| IDENTIFICATION NUMBER: 6269747 | IDENTIFICATION NUMBER: 6256989 |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☒ NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER | IDENTIFICATION NUMBER |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☐ NO ☒ |
| TRIAL ATTORNEY? YES ☒ NO ☐ | TRIAL ATTORNEY? YES ☒ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.

1-5